**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

SHERYL A. MCCONNELL,                          )
                                              )
                  Plaintiff,                  )
                                              )       Cause No. 3:12-cv-361-PPS-CAN
        v.                                    )
                                              )
COMMISSIONER OF SOCIAL SECURITY,              )
                                              )
                  Defendant.                  )


**OPINION AND ORDER**

It's often difficult when one party in a case makes a particular argument, and then the

other side just ignores it. On the one hand, I don't want to reward the oversight by constructing

the response on behalf of the silent party. But I also don't want to just accept the argument

wholesale without giving it some scrutiny. So I'll tend to approach the situation with a

compromise approach. I'll poke around a little to make sure that the ignored argument is

plausible on its face. But if it is, I'll accept it, even if I can imagine more-or-less convincing

counterarguments.

This is important because it's the precise scenario I am confronted with in this case.

Plaintiff Sheryl McConnell applied for Disability Insurance Benefits on July 17, 2009. She cites

several impairments or conditions, including fibromyalgia, migraines, cervical degenerative disc

disease and depression. The last of these is the most important for my purposes. A number of

doctors or other medical professionals opined on her mental impairment during the

administrative proceedings below. Two of them – Dr. Timothy McFadden, MD and Dr.

Stephanie Wade, Psy. D. – essentially found that her depression is severe enough that she can't

1

work.  The ALJ below concluded otherwise.  She specifically addressed the opinion of Dr.

McFadden and explained that she didn't give it much weight because it was inconsistent with his

treatment notes.  With respect to Dr. Wade, however, although the ALJ briefly summarized parts

of her opinion, she was completely silent as to why she didn't find it persuasive.

In her opening brief, McConnell understandably cited this omission as one of her

principal arguments in favor of remand.  Yet the Social Security Administration didn't even

attempt to counter it in its response brief.  That's a huge omission as far as I'm concerned.  I read

Dr. Wade's opinion to pretty clearly imply that McConnell lacks the residual functional capacity

to engage in remunerative work.  This is a compelling piece of evidence contradicting the ALJ's

ultimate conclusion.  The law in this circuit is clear that the ALJ needs to explain why she isn't

giving the contradictory evidence much weight.  The ALJ failed to do that in this case.

Therefore, I will **REMAND** the matter back to the ALJ for further proceedings consistent with

this opinion.

## BACKGROUND

The relevant facts in this case are sufficiently presented in the agency record and ALJ

decision, so only a brief summary of the highlights is warranted here.  McConnell was born on

September 3, 1957, meaning that she was 52 years-old on her alleged onset date of March 3,

2009.  (R. at 34-35.)  She suffers from several acute health problems, many of which seem to

have culminated in a March 2009 incident in which she sought medical assistance from a series

of doctors and other health care providers for a chronic and debilitating – and very long-lasting –

migraine headache.  (*Id.* at 342.)  Up until that point, McConnell had been receiving treatment on

an ongoing basis by a chiropractor clinic for migraines, neck pain and fibromyalgia since at least

March 2007. (*Id.* at 324.) She also reports depression dating back to her twenties. (*Id.* at 365.) Prior to the March 2009 incident, McConnell worked in various jobs as a customer service representative and a dispatcher, but she was forced to take medical leave starting in August 2009. (*Id.* at 35, 54, 57.)

McConnell continued to seek treatment for her headaches throughout the rest of 2009 and 2010. On July 17, 2009, she filed her DIB application, claiming an onset date of March 3, 2009. (R. at 148.) During the course of the administrative proceedings, McConnell saw a number of providers; their identities and reports are adequately summarized in the ALJ decision and the record, so I generally won't repeat that discussion here.

But there are two doctors that are particularly relevant to my analysis. The first is Dr. McFadden, a psychiatrist. He saw her three times – October 2009, December 2009 and March 2010. (*Id.* at 360-67, 413-17.) Dr. McFadden diagnosed McConnell with a major depressive disorder. (*Id.* at 416.) He ultimately opined that she was disabled and could not work. (*Id.* at 418.) Dr. Wade (an independent psychologist) offered a similar opinion. (*Id.* at 374-79.) She diagnosed McConnell with depression and also suggested that it was possible she was suffering from bipolar and anxiety disorders. (*Id.*) Dr. Wade doesn't say so directly, but her opinion suggests that she doubts that McConnell could hold a steady job. She specifically noted that McConnell would be likely to experience frequent pain and migraines while working and would be unable to contribute to the household income. (*Id.* at 377.) She further indicated that McConnell would need a "great deal" of support to accomplish even daily tasks. (*Id.*)

Despite these opinions from two mental health professionals, the ALJ rejected the notion that McConnell's impairments (including her mental impairments) prevented her from working.

She spent a significant portion of her decision explaining why she gave little weight to Dr.

McFadden's opinion, noting that it was largely inconsistent with his treatment notes, which

indicated that McConnell's energy and concentration were within normal limits. (*Id.* at 18.) The

ALJ was not so transparent with respect to Dr. Wade, however. Indeed, except for a handful of

sentences in which she summarized parts of Dr. Wade's opinion, the ALJ didn't mention it

again. (*Id.* at 17.) She certainly didn't engage in the sort of detailed explanation of why she

wasn't affording it much weight like she did with respect to Dr. McFadden. It's unclear to me if

that's because she didn't read Dr. Wade's opinion as supporting McConnell's claims of

disability, or she thought that reasons similar to those she cited in minimizing Dr. McFadden's

opinion would also apply to it, or she just forgot to address Dr. Wade's report.

In any event, the ALJ ultimately concluded that McConnell wasn't disabled. (*Id.* at 20-

21.) In it her request for judicial review, McConnell argued – among other things – that the ALJ

erred when she didn't address why she was rejecting Dr. Wade's opinion. (DE 8 at 18-19.) The

SSA inexplicably didn't offer a counter to this argument in its response (DE 15), and McConnell

unsurprisingly reiterated the point in her reply brief. (DE 16 at 1-2.) The matter is now before

me.

## DISCUSSION

If an ALJ's findings of fact are supported by "substantial evidence" then they must be

sustained. *See* 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Nelms v. Astrue,* 553 F.3d

1093, 1097 (7th Cir. 2009) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Review

of the ALJ's findings is deferential. *See Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).

In making a substantial evidence determination, I must review the record as a whole, but I can't re-weigh the evidence or substitute my judgment for that of the ALJ. *Id.*

"Although this standard is generous, it is not entirely uncritical." *Id.* (*quoting Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002)). I must ensure that the ALJ has built a "logical bridge" between the evidence and the result. *See Getch v. Astrue*, 539 F.3d 473, 481 (7th Cir. 2008). However, if reasonable minds could differ on whether a claimant is disabled, I should affirm the decision denying benefits. *See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

As I noted above, one of McConnell's principal arguments – and the only one I need to address to dispose of the case, at least for now – is that the ALJ erred when she seemingly disregarded Dr. Wade's opinion without explaining why it didn't warrant much weight. As noted, the SSA didn't even attempt to respond to this argument.

McConnell's objection is potentially problematic, if it is true. It's black letter law in the Seventh Circuit that an ALJ "must confront evidence that does not support [his or her] conclusion and explain why it was rejected." *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) (*citing Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994)). So if the ALJ failed to "confront" Dr. Wade's opinion insofar as it doesn't support her decision, then I have no choice but to remand the matter for her to do so. And it's hard to see how the ALJ even arguably did that adequately here. As noted above, the entirety of the discussion of Dr. Wade's opinion consists of a short paragraph in the decision's Step Four section[1] purporting to summarize it. (R. at 17.) The

---

[1] It's a bit of an aside, but an ALJ's review of a DIB application is governed by a five-step process. *See* 20 CFR §§ 404.1520 and 416.920. Step Four of the analysis assesses a severely impaired applicant's residual functional capacity to do other work (in the case where the impaired applicant can't perform the work he or she did prior to impairment). *Id.*

summarized findings were mixed – the ALJ noted that Dr. Wade's report discloses that McConnell reported irritability and sleeplessness, and it diagnoses her as being depressed, but the ALJ countered that by emphasizing that Dr. Wade found McConnell to be logical and coherent and able to follow certain instructions. (*Id.*)

There are two main problems with this treatment. First, the account seems to be a selective reading of the opinion. It omits several key observations, like the fact that Dr. Wade believed that McConnell would need substantial support to accomplish even daily tasks, or that McConnell would be unable to contribute to the household income. (*Id.* at 377.) Second, and much more importantly, simply partially restating or summarizing the opinion just isn't enough to allow me to understand why the ALJ thought it shouldn't warrant much weight. As noted above, I have no way of knowing if the ALJ didn't view the opinion as particularly favorable to McConnell, or if she thought that it wasn't credible in light of the other evidence, or if she just ignored it. And that's the whole point of the judicial review inquiry. I need to be able to ascertain *why* the ALJ did what she did. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000); *see also Kararsky*, 335 F.3d at 544 (noting that the ALJ's failure to discuss a limitation required remand because it was otherwise impossible to tell whether he considered it). I just can't do that here.

Now, I should be careful about making too much of the oversight. Sometimes a case comes up where an ALJ fails to explain why he or she decided to give a particular piece of evidence little weight, but the basis for that decision is nonetheless clear. For example, sometimes two doctors will offer the same opinion, and the reasons provided by an ALJ why he or she didn't weigh one of them very heavily apply equally to the other, even if the ALJ doesn't

6

specifically acknowledge that. *But this isn't that type of case.* It's true that the opinions of Dr. McFadden and Dr. Wade were largely similar, and the ALJ explained in some detail why she didn't give much weight to the former. Yet the two reasons she gave – the inconsistency between Dr. McFadden's opinion and his treatment notes, and the lack of any additional evidence – necessarily couldn't apply to Dr. Wade's opinion. With respect to the former, there's no inconsistent treatment notes in the record; with respect to the latter, Dr. McFadden's contrary opinion *is* that additional evidence.

Still, perhaps the ALJ had a good reason for minimizing Dr. Wade's views. Maybe she thought that although it was additional support for McConnell's claim of disability, it still wasn't enough to overcome the evidence to the contrary. It's also possible that the ALJ might have read the opinion as less favorable to McConnell than McConnell does (and than I do, at least to some degree). But she needed to say those things if they're true. But she didn't. For that matter, the SSA needed to at least attempt to justify the ALJ's oversight in its brief if it wanted to try to salvage the agency decision. But it didn't. Therefore, I'm faced with a situation in which I can't tell what the ALJ was thinking, and the only other party who could even theoretically try to explain it to me decided to keep mum. I have no choice but to send it back to the agency to correct that failing.

**CONCLUSION**

Therefore, and for the reasons set forth herein, the matter is **REMANDED** back to the agency for further proceedings consistent with this opinion.

**SO ORDERED**.

ENTERED: August 14, 2013.

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
